# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WINCHELLA HOWARD, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 20-CV-1101 |
| : | |
| EINSTEIN HOSPITAL, *et al.*, : | |
|     Defendants. : | |

### MEMORANDUM

**ROBRENO, J.**                                                                 **AUGUST 10, 2020**

This matter comes before the Court by way of a Complaint (ECF No. 2), brought by Plaintiff Winchella Howard, proceeding *pro se*. Also before the Court is Howard's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 2). Because it appears that Howard is unable to afford to pay the filing fee, the Court will grant her leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### I.      FACTUAL ALLEGATIONS[1]

Howard has named as Defendants: (1) Albert Einstein Medical Center; (2) Imani Oliver, a Court Representative for DHS;[2] (3) Channel Jones, a DHS social worker; and (4) Jonathan

---

[1] The facts set forth in this Memorandum are taken from Howard's Complaint and all the documents and exhibits attached thereto. Howard's Complaint, however, is a disjointed and unorganized document that is 187 pages in length and consists of approximately 23 pages of handwritten notes and allegations (including some pages that comprise completed sections of the Court's standard *pro se* form complaint). The submission is not in any chronological or subject based order. The remainder of the document includes pages of medical records and state-court dependency related filings, only a small portion of which relate to the minor child at issue in this case.

[2] Throughout this opinion "DHS" is designed to refer to the Philadelphia Department of Human Services.

Houlon, Chief Deputy City Solicitor with the City of Philadelphia Law Department.[3] (ECF No. 2 at 2-3, 14.)[4] Howard challenges the removal of her minor daughter from her custody, and it appears she is alleging violations of her civil rights pursuant to 42 U.S.C. § 1983 based on Defendants' involvement in state-court dependency proceedings regarding the care and custody of her minor daughter.

Howard's minor daughter was born prematurely on August 31, 2017 at 30 weeks' gestation to Howard, and Cameron Reed, the child's father. (ECF No. 1 at 59-60.) At the time of her birth, the family was already known to DHS "due to the failure of the child[']s] parents, . . . Howard and . . . Reed, to provide their [older] children with adequate food and safe, appropriate housing as well as . . . Reed's substance abuse and . . . Howard's mental health problems."[5] (*Id.* at 59.) DHS became involved with the family again on approximately September 15, 2017 after receiving a General Protective Services report regarding the birth of their minor daughter on August 31, 2017. (*Id.* at 60.)

On October 10, 2017, Howard's minor daughter was ready for discharge from Albert Einstein Medical Center, where she had been hospitalized since birth and was being treated for a kidney disorder. (*Id.* at 60-61.) At that time, DHS obtained an Order of Protective Custody and

---

[3] The exhibits attached to the Complaint make clear that the proper name for Defendant Einstein Hospital is Albert Einstein Medical Center, which Howard misidentified in the Complaint as "Einsten Hospital." Defendant Houlon was also misidentified in the Complaint as "Houton." The proper spelling of his last name is Houlon. (ECF No. 2 at 63.) The Clerk of Court will be directed to correct the names of these Defendants on the docket.

[4] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

[5] The exhibits attached to the Complaint reflect that DHS previously removed four (4) children from the care and custody of Howard and Reed in approximately 2012. Although the present action relates primarily to the more recent removal of their minor daughter in 2017, a substantial portion of Howard's exhibits pertain solely to the four eldest children and are not relevant here.

placed the minor child in a foster home.  (*Id.* at 61, 132.)  Subsequently, Howard's minor daughter was adjudicated dependent and committed to the care and custody of DHS on January 23, 2018.  (*Id.* at 132-133.)  From January 2018 through August 2018, DHS continued its efforts to provide services to the family, but it was ultimately determined that it was in the best interests of their minor daughter to terminate Howard's and Reed's parental rights and allow the child, who had been in foster care continuously since October 2017, to be adopted by her caregivers.  (*Id.* at 138-140.)

Howard asserts that removal of the child constituted an "abuse of power by [the] Human Service[s] Department of Philadelphia and racketeering upon Philadelphia Citizens and parents [and] is [a] direct violation of the Constitution[.]"  (*Id.* at 81.)  Howard contends that Defendant Houlon "is the ringleader of this criminal organization" and that he has engaged in "years of abuse by the Law Department."  (*Id.*)  She specifically asserts that Houlon filed "a false abuse neglect [sic]" report against her as well as "a standard petition . . . to remove [her minor daughter] from [her] parents [sic] homes."  (*Id.* at 14.)  Howard contends that by filing these false reports, Houlon committed a criminal felony offense of falsifying documents.  (*Id.* at 175.)

With respect to Defendant Jones, a DHS social worker, Howard alleges that Jones "typed up a forgery Court Order that remove[d] my child . . . from Einstein Hospital."  (*Id.* at 3.)  Howard contends that, in so doing, Defendant Jones "committed misconduct and kidnapping" constituting "a direct violation of" Howard's "Patient Bills of Rights."  (*Id.*)  She further alleges that Defendant Jones "stole . . . Howard['s] identity and gave verbal testimony of things that were not in a written report."  (*Id.* at 3, 41.)  With respect to Defendant Oliver, a DHS court representative, Howard claims that Oliver committed "fraud upon Einstein Hospital" in order to "remove a newborn from the hospital which is [a] direct violation of [the] Patient, . . . Howard[,

3

the child's] mother." (*Id.*)  Howard appears to claim that Albert Einstein Medical Center violated the "Patient Bills [sic] of Rights" by allowing the minor daughter to be removed by DHS.  (*Id.* at 95.)  Howard also appears to assert that Einstein Medical Center violated "basic standards of medical care" with respect to Howard by violating the Health Insurance Portability and Accountability Act ("HIPAA") presumably based on Howard's belief that Einstein Medical Center disclosed her sensitive personal health information in the course of the events leading to the removal of her minor daughter.  (*Id.*)

More broadly, Howard also seems to allege that Defendants are "part of an ongoing cr[i]mi[n]al organization" that should be subject to criminal penalties.  (*Id.* at 4.)  Howard claims that this "criminal organization had [her] children" in "custody for four years[,]" and she seeks $100,000 in damages based on Defendants "keeping the children falsely imprisoned in state custody[.]"  (*Id.* at 5.)  She further asks the Court to hold DHS "accountable for their actions" which caused her to "suffer for eight years without see[]ing my children."  (Id. at 4.)  She seeks damages related to being "traumatized and mentally distressed."  (*Id.*)

## II.   STANDARD OF REVIEW

The Court will grant Howard leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous, fails to state a claim, or seeks monetary relief from an immune defendant.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013). As Howard is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

The Court understands Howard's Complaint to allege claims for violations of her civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court, against all named Defendants with the exception of Einstein Medical Center. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Howard's claims appear to be related to state-court dependency proceedings initiated by DHS, which resulted in the removal of her minor daughter from her care beginning in October of 2017. However, the Complaint contains only a handful of conclusory allegations that DHS and its employees are part of a "criminal organization" that committed a series of criminal acts, including falsifying records, and that ultimately resulted in the removal of Howard's minor daughter from her care.[6] It is, therefore, not plausible and subject to dismissal under § 1915 on

---

[6] To the extent Howard seeks to invoke federal criminal statutes as the basis for her claims, those claims fail. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]" ).

5

this basis alone.  Additionally, it appears that any claims are either barred by the statute of limitations or by principles of immunity.

Howard specifically alleges that her minor daughter was removed from Einstein Medical Center by DHS On October 10, 2017.  The Court understands this allegation to challenge the Order of Protective Custody that DHS obtained on that date which permitted the removal of Howard's minor daughter from Einstein Medical Center and her placement in a foster home.  (*Id.* at 60.)  All of the additional allegations in the Complaint arise from that initial removal and the actions of DHS personnel in the course of the dependency proceedings that ultimately lead to the termination of Howard's parental rights and the adoption of the child.  Accordingly, Howard's claims are based on the initiation of the dependency proceedings in 2017.

Pennsylvania's two-year statute of limitations applies in § 1983 actions.  *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).   The limitations period begins to run from the time "the plaintiff knew or should have known of the injury upon which [her] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).  Because the Complaint and the exhibits make clear that Howard knew, on or about October 17, 2017, that her minor daughter was initially removed from her care on October 10, 2017, and placed into foster care at that time, her claims related to the removal of the child must have been raised by October 17, 2019.  (*See* ECF No. 2 at 58-66, October 17, 2017 Dependency Petition and Affidavit of Service); *see Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009") (footnote omitted).  As Howard did not file her Complaint until February 20, 2020, and the Complaint

6

does not reflect a basis for tolling, her claims based on the dependency proceedings initiated in 2017 are time-barred.

Moreover, even if Howard's claims were not barred by the statute of limitations, most of the Defendants she names in this action are entitled to absolute immunity from any claims for damages under § 1983. Howard's allegations concern Defendants' actions in filing and preparing petitions, abuse and neglect reports, and orders related to the state court dependency proceedings. The Complaint makes clear that Howard only seeks damages from the Defendants specifically for their role in preparing materials for, or presenting matters to, the state court in the course of the dependency proceedings, and for initiating and prosecuting the dependency proceedings on behalf of the Commonwealth. Defendants are, accordingly, entitled to absolute immunity from damages for such claims. *See B.S. v. Somerset Cty.*, 704 F.3d 250, 262-65 (3d Cir. 2013) (recognizing that "in *Ernst v. Child & Youth Services of Chester County*, . . . we joined several of our sister circuits in deeming 'child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state ... absolute[ly] immun[e] from suit for all of their actions in preparing for and prosecuting such dependency proceedings.") (citing *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 488-89 (3d Cir. 1997)).

The only remaining claims that the Court has not addressed are those made against Einstein Medical Center. The precise nature of the claims Howard seeks to bring against Einstein Medical Center is unclear.[7] To the extent she seeks to raise a civil claim based on an alleged violation of HIPPA related to a purported disclosure of her personal health information,

---

[7] The Court does not read Howard's Complaint to assert a § 1983 claim against Einstein Medical Center. However, even if Howard intended to assert such a claim, her claim against Einstein Medical Center would not be plausible because private hospitals and their employees are generally not "state actors" subject to liability under § 1983. *See Carver v. Plyer*, 115 F. App'x 532, 537 (3d Cir. 2004).

Howard does not state a plausible claim and her Complaint must be dismissed because "HIPAA does not create a private right of action." *See Johnson v. WPIC*, 782 F. App'x 169, 170-71 (3d Cir. 2019) (*citing Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)); *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011); *cf.* 65 Fed. Reg. 82,600, 82,601 (Dec. 28, 2000) (" Under HIPAA, individuals do not have a right to court action."). Similarly, to the extent Howard seeks to bring a claim under the Pennsylvania Patient's Bill of Rights, *see* 28 Pa. Code § 103.22, it "does not appear . . . that Plaintiff can pursue a cause of action under the Patient's Bill of Rights." *See Henderson v. Pollack*, Civ. A. No. 07-1365, 2008 WL 282372, at *4 (M.D. Pa. Jan. 31, 2008). Moreover, even assuming that Howard could pursue such a cause of action, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c)(3) in light of the dismissal of all claims otherwise within the Court's original jurisdiction pursuant 28 U.S.C. § 1331.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Howard leave to proceed *in forma pauperis* and dismiss her Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). An appropriate Order follows.

BY THE COURT:

 /s/ Eduardo C. Robreno  
**EDUARDO C. ROBRENO, J.**

---

[8] Additionally, there is no basis for diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332.